## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| RONALD OVERMAN, | ) | CASE NO. 1:15 CV 1581 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| GANLEY FORD WEST, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | **MEMORANDUM OPINION** |

This Matter is before the Court on the Motion to Dismiss for Lack of Jurisdiction or, in the Alternative, Motion to Compel Arbitration and Stay Proceedings filed by Defendants, Ganley Ford West, Inc., Robert Brown, Robert Lisy and Shirley Gonda. (Docket #7.)

This case arises out of Plaintiff, Ronald Overman's employment with Defendant, Ganley Ford West, Inc. On February 14, 2014, Mr. Overman was injured when he slipped and fell on ice while working at Ganley Ford West. Mr. Overman alleges the slip and fall resulted in a disability known to Defendant; that Defendants provide requested accommodations on more than one occasion; that he was subsequently retaliated against and discriminated against by his Supervisor for the foregoing and for filing a request for workers compensation benefits; and, that he filed three written complaints with Defendants and made oral complaints to Defendants regarding the alleged retaliation and discrimination but that Defendants took no action. Mr.

Overman alleges that Defendants engaged in ongoing harassment; refusal to honor medical restrictions; and, disparate treatment, designed to create working conditions that would force him to quit. Mr. Overman left Ganley on February 24, 2015.

Mr. Overman filed his Complaint in this case on August 10, 2015, raising the following claims: Count I – Failure to Pay Overtime Compensation; Count II – Worker's Compensation Retaliation; Count III – Retaliatory Discharge in Violation of the Family Medical Leave Act; Count IV – Hostile Work Environment Based on Disability Discrimination; Count V – Failure to Provide Reasonable Accommodation; Count VI – Wrongful Constructive Discharge Based on Disability Discrimination; and, Count VII – Intentional Infliction of Emotional Distress.

On September 25, 2015, Defendants filed their Motion to Dismiss for Lack of Jurisdiction or, in the Alternative, Motion to Compel Arbitration and Stay Proceeding. (Docket #7.) Defendants argue this Court lacks subject matter over the claims raised by Mr. Overman because a valid and enforceable arbitration agreement is in place between the parties. *Morrison v. Circuit City Stores*, 70 F. Supp. 2d 815, 828-29 (S.D. Ohio 1999). Defendants assert that Mr. Overman entered into a mandatory Arbitration Agreement with Ganley on December 14, 2012, thereby agreeing and acknowledging that arbitration was the sole and exclusive mechanism for resolving any disputes with Defendants and that the Arbitration Agreement expressly applies to all of the claims raised by Mr. Overman in the Complaint. Further, Defendants assert that on January 1, 2015, Mr. Overman joined the Auto Mechanics Local Union No. 1363 of the AFL-CIO, agreeing to abide by the Grievance Procedure outlined in the Union's Collective Bargaining Agreement and, if the Grievance Procedure did not provide a resolution, to engage in binding arbitration therafter. Defendants state that Mr. Overman did, in fact, file a grievance with the

-2-

Union, but that the grievance was ultimately not pursued by Mr. Overman or the Union.

On November 6, 2015, Mr. Overman filed his Brief in Opposition to Defendants' Motion. (Docket #12.)  Mr. Overman argues that he was forced to sign the Arbitration Agreement to keep his job; that he was rushed into signing the Arbitration Agreement; and, that no one explained to him what arbitration was, what rights he was giving away, or that he should consult an attorney before signing.  Further, Mr. Overman states that the Union CBA's grievance and arbitration provisions did not include a waiver of his claims under FMLA or any of Ohio's employee protection statutes.  Mr. Overman asserts that there is no basis for dismissal of this case, as the Federal Arbitration Act ("FAA") requires the Court to stay, rather than dismiss this case in the event the Court finds the Arbitration Clause to be binding; that the Arbitration Agreement fails for lack of mutual obligation because it does not require Ganley to arbitrate its claims against Mr. Overman; that the Arbitration Agreement is substantively and procedurally unconscionable and, therefore, unenforceable under the FAA or Ohio law; and, that Mr. Overman's claims fall outside the scope of the CBA.

On November 16, 2015, Defendants filed their Reply Brief (Docket #13), arguing that the Arbitration Agreement is neither substantively nor procedurally unconscionable, as it is binding on both Parties; the language requiring arbitration was clear; and, Ganley was under no obligation to explain every detail in the Arbitration Agreement.  Defendants state that all of Mr. Overman's claims arise out his employment with Defendants; that his statutory claims are arbitrable; and, that the CBA's grievance procedure and arbitration provision are enforceable.

### Discussion

Section 3 of the Federal Arbitration Act ("FAA") provides as follows:

-3-

> If any suit or proceeding be brought in any of the courts of the United States upon
> any issue referable to arbitration under an agreement in writing for such
> arbitration, the court in which such suit is pending, upon being satisfied that the
> issue involved in such suit or proceeding is referable to arbitration under such an
> agreement, shall on application of one of the parties stay the trial of the action
> until such arbitration has been had in accordance with the terms of the agreement,
> providing the applicant for the stay is not in default in proceeding with such
> arbitration.

9 U.S.C. § 3. The primary purpose of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms." *Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 479 (1989). "The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Deck v. Miami Jacobs Business College Co.*, Case No. 3:12 CV 63, 2013 U.S. Dist. LEXIS 14845, *2 (S.D.Ohio 2013).

The threshold question is "whether the dispute is arbitrable, meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of the agreement." *Landis v. Pinnacle Eye Care*, LLC, 537 F.3d 559, 561 (6th Cir. 2008). Courts examine "arbitration language in a contract in light of the strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration." *Hurley v. Deutsche Bank Trust Co. Americas*, 610 F.3d 334, 338 (6th Cir. 2010). The Sixth Circuit analyzes (1) whether the parties agreed to arbitrate; (2) the scope of the agreement to arbitrate; (3) if federal statutory claims are involved, whether Congress intended those claims to be arbitrable; and, (4) if only some of the claims are subject to arbitration, whether the nonarbitrable claims should be stayed pending arbitration. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003).

The Arbitration Agreement signed by Mr. Overman on December 14, 2012, reads as

-4-

follows:

> The Employee understands that it is the goal of the dealership to resolve any complaints of workplace wrongdoing. Any such complaints may be made directly to the department manager or General Manager or may be made to the independent third party, Labor Consultants of America, through the Employee Protection Line. **The employee agrees that, if any complaint of workplace wrongdoing remains unresolved, any resulting legal claim of wrongdoing shall be submitted by the employee and the dealership to the American Arbitration Association in Cleveland, Ohio.** The employee acknowledges that this agreement for arbitration of any legal claim of wrongdoing shall not be interpreted as implying a contract of employment between the employee and the dealership.

By signing the Arbitration Agreement, Mr. Overman agreed to arbitrate his claims of workplace wrongdoing; all of the claims raised in the Complaint fall within the scope of said Agreement; and, all of Mr. Overman's claims, including his statutory claims arising under Federal and State law, are arbitrable. *See Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306 (6th Cir. 2000); *Terlau v. Air Liquide Indus. U.S., L.P.*, Case No. 1:14 CV 19, 2014 U.S. Dist. LEXIS 35074 (S.D. Ohio 2014); *Brinkerhoff v. Zachry Const. Corp.*, Case No. 2:04 CV 750, 2005 U.S. Dist. LEXIS 33333, at *16-17 (S.D. Ohio 2005); *Smith v. BT Conferencing, Inc.*, Case No. 3:13 CV 160, 2013 U.S. Dist. LEXIS 158362 (S.D. Ohio 2013); *Chambers v. Sun West Mortg. Co.*, 1:13 CV 399, 2014 U.S. Dist. LEXIS 72947, *20 (S.D. Ohio May 28, 2014).

Further, Mr. Overman has failed to demonstrate that the Arbitration Agreement is unconscionable, as both Parties agreed that unresolved complaints of workplace wrongdoing would be submitted to arbitration and Mr. Overman voluntarily signed the Agreement; the language of the Arbitration Agreement is clear; and, Defendants were not required to explain each aspect of the contract prior to signing. *See Skerlec v. Ganley*, 2012-Ohio-5748 (8th Dist. 2012) (finding the exact same arbitration agreement not substantively unconscionable); *Smith v.*

*Sterling Jewelers, Inc.*, Case No. 5:12 CV 2675, 2013 U.S. Dist. LEXIS 9930, at *6-8 (N.D.

Ohio 2013) (outlining factors for determining whether an arbitration agreement is procedurally

unconscionable).[1]

**Conclusion**

For the foregoing reasons, the Motion to Dismiss for Lack of Jurisdiction or, in the

Alternative, Motion to Compel Arbitration and Stay Proceeding filed by Defendants, Ganley

Ford West, Inc., Robert Brown, Robert Lisy and Shirley Gonda (Docket #7) is hereby

GRANTED IN PART.  (Docket #7.)

Mr. Overman shall submit his claims to binding arbitration, pursuant to the requirements

of the Arbitration Agreement.  This case is hereby DISMISSED WITHOUT PREJUDICE,

subject to refiling if warranted.

IT IS SO ORDERED.

DONALD C. NUGENT
United States District Judge

DATED: December 17, 2015

---

[1]

    Because the Court finds the 2012 Arbitration Agreement signed by Mr. Overman to be binding on the Parties, the Court need not address the implications of the applicable Collective Bargaining Agreement. However, it is worth noting the Mr. Overman did in fact begin the Grievance Procedure required under the terms of the CBA but, for whatever reason, neither he nor the Union pursued the claim beyond its initial stages. The mere fact that Mr. Overman initiated Union Grievance Procedures suggests that he believed that the relevant provisions of the CBA applied to his claims.